Daniel RIOS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 01–96–00627–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 14, 1999.

Tony Aninao, Houston, for Appellant.

Keli Pool Roper, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, O'CONNOR, and WILSON.

## OPINION

MURRY B. COHEN, Justice.

A jury found appellant guilty of aggravated robbery and assessed punishment at ten years, probated, and a $10,000 fine. We reverse and remand.

## FACTS

The victim and her three children were at home on October 9, 1995 when the oldest child opened the door. Two armed men then forced their way in, with masks covering their faces. They tied up the victim and her oldest child and then went from room to room, opening drawers and closet doors, speaking Spanish. They fled when the victim's daughter woke up and screamed. They stole the victim's car, pager, cash, and jewelry. Police found appellant's fingerprints inside the house on a dining room closet door.

## VOIR DIRE

In his first point of error, appellant complains the trial judge abused her discretion in limiting the defense's voir dire to 45 minutes. Appellant alleges that, when the allotted 45 minutes had passed, he still had proper voir dire questions to ask the venire; therefore, appellant argues he was unable to exercise his peremptory strikes intelligently.

The trial judge may impose reasonable restrictions on the exercise of voir dire examination. *Boyd v. State,* 811 S.W.2d 105, 115 (Tex.Crim.App.1991). However, a trial judge may not restrict proper questions that seek to discover a juror's views on relevant issues. *McCarter v. State,* 837 S.W.2d 117, 121–22 (Tex. Crim.App.1992). The standard of review is abuse of discretion. *Id.* at 119. We must decide whether the questions appellant wanted to ask were proper voir dire questions. *Id.* at 119–20. Defense counsel described as follows the questions he wanted to ask:

> Your Honor, at this time I'm on the third row, and I believe it's juror No. 28. And I would ask for more time for the following reasons:
>
> There's still half of the jury panel that I have to question on jobs that involve entry into homes. And this case involves entry into a home.
>
> Also, I have to ask the following question: Anti-crime organizations. I have not gotten to that. And I also need some more time so that I could touch on the punishment issue, Your Honor. And I would be asking people about punishment and individual jurors as to what they would consider for punishment, what they could, and then get their opinions, more specific opinions than they have expressed about punishment.
>
> For that reason I would request more time.

The State contends this description was too general to preserve error, *i.e.*, it was too general to inform the judge of what appellant wanted to ask. We disagree. The mention of anti-crime organizations was obviously an attempt to question venire members about membership in such organizations and whether that would affect their verdict, as is routinely done in voir dire. The statement about punishment showed appellant's intent to question about more specific areas than just willingness to consider the entire punishment

range, as was covered by the prosecutor during his voir dire.

In *McCarter*, the Court of Criminal Appeals unanimously held the following statement by defense counsel was specific enough to preserve error:

> At this time I would request more time. I have more important topics of people that have problems with drugs in their immediate family. I have two questions of prior criminal jury experience and I would have a question of police officers that are involved, whether they personally know these police officers, and I have a question of people that have been accused, also, accused by police officers. She did not go into the question sufficiently enough for me to make a decision on it. . . . I wanted to question those jurors that had a negative experience with police officers . . . that is the question of who had problems with drugs and their immediate family. . . .

837 S.W.2d at 118–19. The court then held the proposed questions were proper and that McCarter did not unreasonably prolong voir dire. *Id.* at 121–22. Therefore, the court reversed and remanded. *Id.* at 122.

■ We follow the court's reasoning in *McCarter* and hold the judge erred. Counsel's statement showed that the questions on punishment he sought to pose were proper.[1] The State contends appellant wasted time by questioning the venire about the presumption of innocence, but appellant did not spend that time "rambling" or lecturing to the jury; as the State concedes, appellant used the time to question the venire. We conclude that appellant did not waste time during voir dire.

■ Until recently, this error required automatic reversal. The Court of Criminal Appeals so held unanimously in 1991. *Nunfio v. State*, 808 S.W.2d 482, 485 (Tex.

Crim.App.1991). This was because the harm was "denial of the ability to intelligently exercise one's peremptory strikes." *Id.* Analysis of such harm on a case-by-case basis would be "fruitless," the court said, recognizing that "not all errors are such as to be meaningfully subject to a harm analysis." *Id.*

The law has changed dramatically in the past year. Now, voir dire errors that were considered incapable of harm analysis are, or may be, subject to it. Jury shuffle error is one example. *See Roberts v. State* 978 S.W.2d 580, 580 (Tex.Crim.App.1998) (vacating judgment of reversal and remanding for court of appeals to decide whether the jury shuffle error "can be analyzed in terms of harm and, if so, whether any harm occurred."); *see also Roberts v. State*, No. 12–94–00205–CR, slip op. at 6, 1999 WL 115104 (Tex.App.—Tyler Feb.26, 1999, pet. filed) (op. on remand) (holding that jury shuffle error "defies analysis by harmless error standards.") (designated for publication). The *Roberts* court on remand held that "the erroneous shuffle resulted in the selection of a jury that may not have been adequately questioned during voir dire" and that appellant could not prove harm nor could the State disprove it. *Id.* Thus, the Tyler court reversed without conducting a harm analysis. *Id.* And the Fort Worth court reached a very similar result in *Garza v. State*, 988 S.W.2d 352 (Tex.App.—Fort Worth 1999, pet. ref'd & pet. granted). In a post-*Roberts* case, the court concluded that jury shuffle was nonconstitutional error to be reviewed under Tex.R.App. P. 44.2(b). *Id.* at 356. The court also recognized that assessing harm from an improper shuffle was "impossible." *Id.* Nevertheless, the Fort Worth court reversed. It said:

> . . . . Where a Rule 44.2(b) error does not lend itself to this type of harm analysis, i.e., determining whether a substantial right was affected, neither logic

---

1. We need not consider the issue raised regarding the questions about entry into homes because the judge allowed appellant to finish questioning the venire on that issue.

nor *Cain* requires us to disregard the error.

A defendant's right to a jury [shuffle] is a substantial right.... *To disregard a jury shuffle error because an appellant is unable to show that the error affected the jury's verdict, would leave to a trial court's discretion the rule governing a jury shuffle.*

*Id.* at 357 (emphasis added, citations omitted). The Fort Worth court refused to do that.

In *Cena v. State,* decided May 12, 1999 *per curiam,* the Court of Criminal Appeals considered the same error as here, the refusal to permit a proper voir dire question. 991 S.W.2d 283, 283 (Tex.Crim.App. 1999). The El Paso Court of Appeals had reversed for such error without considering harm, as required by the unanimous *Nunfio* decision. *Cena v. State,* 960 S.W.2d 804, 808 (Tex.App.—El Paso 1997), *vacated,* 991 S.W.2d 283. With little discussion and without using the word "overruled," the court cited, but unanimously refused to follow, *Nunfio. Cena,* 991 S.W.2d at 283. It held that, for this error, a harm analysis was required,[2] and it remanded for one to be done. Since then, the court has expressly overruled *Nunfio. Gonzales v. State,* 994 S.W.2d 170, 172 (Tex.Crim.App.1999).

■ What is the standard for review of harm for this error, for which analysis of harm was previously considered fruitless? It is Tex.R.App. P. 44.2(a), the standard for constitutional error because " ... the right to pose proper questions during voir dire examination is included within the right to counsel under Article I, § 10, of the Texas Constitution." *Gonzales,* 994 S.W.2d at 171.

The Texarkana Court of Appeals has recently applied the constitutional error harm standard and reversed a judgment for the same error that is now before us. On original submission in *Gonzales,* the Texarkana Court reversed without a harm analysis because of erroneous limitation of voir dire examination. *Gonzales v. State,* 972 S.W.2d 877, 880 (Tex.App.—Texarkana 1998). Its judgment was reversed by the Court of Criminal Appeals on June 9, 1999 in *Gonzales v. State,* 994 S.W.2d 170. In its opinion on remand, the Texarkana Court again reversed, this time applying Tex.R.App. P. 44.2(a), the constitutional error rule. *Gonzales v. State,* 2 S.W.3d 600, 602 (Tex.App.—Texarkana 1999, no pet. h.) (op. on remand) (designated for publication). Citing *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997), it recognized that there are situations where "a fair and reasoned harm analysis is extremely difficult or impossible to apply." *Gonzales,* at 603. The Texarkana Court declined to hold the error was "automatically" harmful, but concluded " ... it is of the type that we believe will rarely be harmless." *Id.* We agree.

As in *Gonzales,* the error here harmed appellant by denying him the intelligent use of his peremptory challenges. *Compare Roberts,* No. 12–94–00205–CR, slip op. at 6 (Tex.App.—Tyler, Feb. 26, 1999, pet.filed) (reversing on remand and holding that jury shuffle error was harmful under rule 44.2(b) because it "resulted in the selection of a jury that may not have been adequately questioned during voir dire"). We perceive the same harm here. Nothing suggests the error here was harmless, *e.g.,* questioning about punishment was improperly restricted and the

---

**2.** This differs from the remand order in *Roberts,* in which the court of appeals was ordered first to decide whether the jury shuffle error could be analyzed under harmless error standards. In contrast, the Court of Criminal Appeals in *Cena* ordered the El Paso court to conduct a harm analysis. It did not state whether the standard for assessing harm from

improperly limiting voir dire questioning was that of Tex.R.App. P. 44.2(a) (constitutional error) or 44.2(b) (other errors). That question was soon answered in *Gonzales v. State,* 994 S.W.2d 170, 171 (Tex.Crim.App.1999) (constitutional error under 44.2(a) is the standard).

punishment assessed exceeded the statutory minimum.

We believe this harm from this error, like the erroneous granting of a jury shuffle in *Roberts* and the improper restriction on voir dire in *Gonzales,* defies analysis, even though we have been ordered to analyze it and have tried to. The only way we can see to determine harm would be to have a motion for a new trial hearing and ask the jurors the forbidden voir dire questions. If they answered favorably to the defendant, would that prove he was not harmed? The answer is doubtful because we are dealing with peremptory strikes here, and appellant might have used one even on a juror who, on a cold record, answered favorably.

Suppose the juror at the motion for new trial hearing answered the forbidden questions unfavorably to appellant. Would that alone require reversal? If, in addition, defense counsel were to state that, based on the juror's answer, he would have struck the juror, would reversal then be automatic? Because the strike is peremptory and thus not controlled by the juror's words (no matter how favorable to the defendant), how could an appellate court say there was no harm?

We doubt that by its holdings in *Cena* and *Gonzales* the Court of Criminal Appeals meant to require a procedure so cumbersome and so predictably fruitless. Even if it did, appellant has had no chance to pursue it because both *Cena* and *Gonzales* were decided after his period for a motion for new trial hearing expired. Under these circumstances, we hold reversal is required.

Point one is sustained.

## LEGAL SUFFICIENCY OF THE EVIDENCE

In the sixth point of error, appellant contends the evidence of identity was legally insufficient because the State did not show that a fingerprint inside the victim's house was appellant's or was left during the robbery.

We follow the usual standard of review. *See Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

 Appellant alleges that evidence of his fingerprint being inside the victim's house is insufficient to support his conviction. Although appellant testified that he had installed carpet in houses near the victim's neighborhood, he never claimed to have been inside the victim's house, and he could not explain why his fingerprints were there. Fingerprints found inside a house without an innocent explanation are enough to prove a defendant's identity and to support a verdict of guilty. *Phelps v. State,* 594 S.W.2d 434, 436 (Tex.Crim.App. 1980); *Gomez v. State,* 905 S.W.2d 735, 740 (Tex.App.—Houston [14th Dist.] 1995), *aff'd on other grounds,* 962 S.W.2d 572 (Tex.Crim.App.1998); *Nieto v. State,* 767 S.W.2d 905, 908 (Tex.App.—Corpus Christi 1989, no pet.).

The victim testified that the carpet and the tile had not been changed since she had moved into the house, almost six years before this crime and, since then, the house, including the doors, had been repainted. She also testified that, before the robbery, she had cleaned the house and had washed the door on which appellant's fingerprints were found with cleaning solvent and a towel. Evidence showed that this would have removed any fingerprints on those surfaces. A police investigator testified that the fingerprints found on the closet door in the victim's house matched appellant's fingerprints. Further, both the victim and her son testified that they did not see the robbers wearing gloves when they entered the house. The victim testified that the door upon which appellant's fingerprints were found makes a distinctive sound upon opening, and that she heard it opened during the robbery. Moreover, the robbers spoke Spanish. Appellant is Hispanic, and he testified that his parents spoke Spanish, that he could

speak some Spanish, and that he could understand Spanish when he heard it.

We hold that the evidence was legally sufficient.

We overrule the sixth point of error.

Because of our disposition of the first point of error, we do not address the second, third, fourth, or fifth points of error.

The judgment is reversed, and the cause is remanded.

En banc consideration was requested.

A majority of the justices of the Court voted to overrule the request for en banc consideration.

Justice TAFT, dissenting from the overruling of the request for en banc consideration.

Chief Justice SCHNEIDER and Justice NUCHIA join Justice TAFT's dissenting opinion.

TIM TAFT, Justice, dissenting from denial of En Banc Review.

I requested en banc review based on conflicts between the Panel Opinion and the trend in opinions from the Court of Criminal Appeals treating voir dire error as non-constitutional error for which harm must be shown.

## A. Constitutional Error?

The Panel Opinion holds that denial of a proper voir dire question is constitutional error because the right to propose questions during voir dire examination is included within the right to counsel under Article I, section 10, of the Texas Constitution, citing *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex.Crim.App.1999). I do not read *Gonzales* as addressing whether the error is constitutional or non-constitutional. However, in *Jones v. State*, 982 S.W.2d 386 (Tex.Crim.App.1998), the Court of Criminal Appeals did address that precise

issue in the context of another voir dire error. Having found error in granting the State's challenge of a veniremember for cause, the court squarely and expressly addressed whether the error was constitutional. *Id.* at 390–91. Despite acknowledging that constitutional provisions for the right to an impartial jury bear on the jury selection process, the Court of Criminal Appeals held the constitutional right was not violated by every error committed during the voir dire examination. *Id.* at 391. The *Jones* court concluded that no constitutional violation was presented. *Id.* No such analysis was done in *Gonzales*.

It is significant that the *Jones* reasoning includes a quotation from a case emphasizing that the error in jury selection did not produce any claim that the jury, as finally constituted, was biased or prejudiced. *Id.* (quoting *Shettel v. United States*, 113 F.2d 34, 36 (D.C.Cir.1940)). The same reasoning applies to the error in the present case. Even if appellant was deprived of the opportunity to ask a proper question, there has been no allegation, much less a showing, that the jury, as finally constituted, was biased.

Therefore, I find the Panel Opinion contrary to the trend in this area of the law, as represented by the *Jones* case.

## B. Appellant's Impossible Burden

What really appears to bother the Panel, and the other courts of appeals whose cases are cited in the Panel Opinion, is the possibility of a stark change in the law, from a former automatic holding of harm to placement of the burden on the accused to show harm. This is a legitimate concern. *See Gonzales*, 994 S.W.2d at 172 (Price, J., dissenting) (disagreeing with the hypothesis that the *lack of ability to prove harm* equals the *lack of harm* itself, but acknowledging that this reasoning appears to drive each of the Court of Criminal Appeals's *Cain* [1] analyses). There are two

1. *Cain* held that "except for certain federal constitutional error labeled by the United

States Supreme Court as 'structural,' no error ... is categorically immune [from] a harmless

ways to look at this situation, however. It appears that a majority of the Court of Criminal Appeals is of the opinion that criminal defendants were receiving windfalls in cases like *Nunfio v. State,* 808 S.W.2d 482 (Tex.Crim.App.1991), which held that certain types of error were reversible per se. Indeed, in *Jones,* the Court of Criminal Appeals observed it was returning to the rule established more than a century ago in holding that no reversible error is presented unless the appellant can show he was denied a trial by a fair and impartial jury. *Jones,* 982 S.W.2d at 392.

### Conclusion

Accordingly, I respectfully disagree with the Panel Opinion. I would hold that the error in not allowing appellant's counsel to ask a proper voir dire question is non-constitutional, and that appellant has not met his burden [2] to show the trial court's error affected appellant's substantial rights. Because a majority of this Court has denied en banc review, I respectfully dissent.

Chief Justice SCHNEIDER and Justice NUCHIA join this dissenting opinion.

error analysis." *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

**2.** *See Merritt v. State,* 982 S.W.2d 634, 637 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed).