Reversed and Remanded and Opinion filed April 22, 2004









Reversed and Remanded and Opinion filed April 22,
2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00469-CR

____________

 

GARY LEE OWENS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 942128

 



 

O P I N I O N

Appellant challenges his conviction for
driving while intoxicated on two grounds: (1) the evidence is legally and
factually insufficient to support the verdict; and (2) the trial court
improperly denied his motion to suppress expert testimony on retrograde
extrapolation.  We reverse and remand for
a new trial.  

Factual and
Procedural Background








On August 26, 2002, appellant, Gary Lee
Owens, was arrested for driving while intoxicated.  Allison Matsu, the complainant, and Robert
Turner arrived at Agora, a coffee shop/wine bar, at approximately 6:30 to 6:45
on the evening of August 26th.  Robert
agreed to stay with the car and wait for a parking space to become available
while Allison went into Agora to order coffee. 
Agora=s parking lot is shared by an art gallery
and a few apartments located above the art gallery.  Appellant resided in one of those apartments.

While Robert was waiting for a space to
become available, appellant, while driving a van, collided with Allison=s car in the
parking lot.  It is unclear whether the
van was already in a parking space, and appellant was simply moving the van, or
whether appellant was pulling into the parking space when the collision
occurred.  Robert notified Allison of the
accident, and when she came outside, both Robert and Allison saw appellant get
out of the van.  At this point, Allison
confronted appellant about the damage to her fender, but appellant denied
hitting her car.  Allison attempted to
get insurance information from appellant, but appellant refused and went to his
apartment located above the art gallery. 
When appellant refused to provide his insurance information, Allison
called the police.  Allison testified at
trial she smelled a strong odor of alcohol coming from appellant and he was
stumbling and slurring his speech. 
Robert testified to the same version of facts; however, on
cross-examination, Robert admitted his memory was Arefreshed@ after a
conversation with Allison a few days before trial.  

One of appellant=s roommates, Bruce
Moffett, testified that around 6:30 to 7:00 p.m., appellant returned to the
apartment.  Moffett saw appellant
periodically throughout the day, but he never saw appellant drinking alcohol
and he did not have any reason to believe appellant had been drinking prior to
6:30 or 7:00 p.m.  After appellant
returned home, he was involved in an altercation with another individual in the
apartment.  Appellant called the police
to report a domestic violence claim, and, according to Moffett, began drinking
immediately after the incident.








Officer Nguyen responded to Allison=s call, arriving
at approximately 8:30 p.m., over one and a half hours after the accident.  Appellant, believing Officer Nguyen was
responding to his domestic violence call, met Nguyen in the parking lot.  Nguyen testified appellant was obviously
intoxicated because he could smell a strong odor of alcohol on appellant from
three feet away, appellant was staggering, had bloodshot eyes, and was slurring
his speech.  At 8:35, Officer Dumas
arrived and administered field sobriety tests to appellant.  When appellant performed poorly on both
tests, Dumas  arrested him for driving
while intoxicated. 

Appellant was transported to the city jail
intoxilyzer room, where appellant agreed to give a voluntary breath
sample.  The first sample was taken at
10:08 p.m., which showed appellant=s blood alcohol
content (ABAC@) to be
0.108.  The second sample, taken two
minutes later, showed appellant=s BAC to be
0.103.  Both samples were taken nearly
three and one half hours after the accident. 


Appellant filed a motion to suppress,
asking the court to exclude any expert testimony using retrograde extrapolation
based on the intoxilyzer results.[1]  The trial court denied the motion, and
despite counsel=s urging reconsideration several times
during trial, the court stood firmly on its ruling.  Appellant was convicted by a jury of driving
while intoxicated and sentenced by the court to forty-five years= confinement.  Appellant brings two points of error on
appeal: (1) the evidence is factually or legally insufficient to support the
conviction; and (2) the trial court erred in denying the motion to suppress. 

Legal Sufficiency
of the Evidence








By his first point of error, appellant
challenges the legal sufficiency of the evidence to support the element of
intoxication.  We address appellant=s legal
sufficiency challenge first because if we determine the evidence is legally
insufficient to support appellant=s conviction, we
must render a judgment of acquittal.  See
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996); Rios v.
State, 4 S.W.3d 400, 404B05 (Tex. App.CHouston [1st
Dist.] 1999), pet. dism=d, improvidently
granted, 122 S.W.3d 194 (Tex. Crim. App. 2003).  In reviewing the legal sufficiency of the
evidence, we consider all the evidence in a light most favorable to the
prosecution to determine if any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979).  We consider all of the evidence
admitted, both properly and improperly admitted, as well as direct and
circumstantial evidence.  Conner v.
State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); Muttoni v. State,
25 S.W.3d 300, 308 (Tex. App.CAustin 2000, no
pet.).  Additionally, when the trial
court=s charge
authorizes conviction on several different theories, the verdict will be upheld
if the evidence is sufficient on any one of the theories.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003). 

Appellant claims the evidence is legally
insufficient to prove he was intoxicated at the time of the accident.  To establish the offense of driving while
intoxicated, the State must prove the defendant was intoxicated while operating
a motor vehicle in a public place.  Tex. Pen. Code Ann. ' 49.04 (Vernon
2003).  AIntoxication@ is defined as: A(A) not having the
normal use of mental or physical faculties by reason of the introduction of
alcohol, . . . or (B) having an alcohol concentration of 0.08 or more.@[2]  Tex.
Pen. Code Ann. ' 49.01(2). 
Viewing the evidence in a light most favorable to the verdict, Allison
Matsu, Robert Turner, and Rickey Viser, the State=s expert witness,
testified appellant was intoxicated at the time of the accident.  Matsu and Turner both testified they
witnessed appellant stumbling, slurring his speech, and that he smelled
strongly of alcohol.  Both Matsu and
Turner testified that, in their opinion, appellant was intoxicated.  Additionally, Viser=s testimony
presented evidence that appellant=s BAC was over the
legal limit of 0.08 at the time of driving. 
Accordingly, after reviewing all of the evidence, including inadmissible
evidence, we conclude there was sufficient evidence for a rational trier of
fact to have found beyond a reasonable doubt appellant was intoxicated, under
either the Aimpairment@ or Aper se@ theory.  Appellant=s first point of
error as to legal sufficiency is overruled.  


 








Motion to Exclude
Expert Testimony

In his second issue, appellant contends
the trial court erred in admitting Viser=s expert
testimony.  We review the trial court=s decision to
admit or exclude scientific expert testimony under an abuse of discretion
standard.  Sexton v. State, 93
S.W.3d 96, 99 (Tex. Crim. App. 2002). 
The trial court abuses its discretion if it acts without reference to
any guiding rules and principles.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  Thus, we will uphold the trial court=s decision as long
as it is within the zone of reasonable disagreement, given the evidence
presented and the requirements of Rule 702 of the Texas Rules of Evidence.  Sexton, 93 S.W.3d at 99.   

The trial court is guided by Texas Rule of
Evidence 702 in determining whether expert testimony should be admitted.  Kelly v. State, 824 S.W.2d 568, 572
(Tex. Crim. App. 1992).  Rule 702
provides: AIf scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.@  Tex. R. Evid. 702.  The trial court serves as Agatekeeper,@ admitting
evidence only if it is sufficiently reliable and relevant to assist the
jury.  Jordan v. State, 928 S.W.2d
550, 554B55 (Tex. Crim.
App. 1996).

A.      Mata
v. State








The leading case concerning the admission
of expert testimony applying the science of retrograde extrapolation is Mata
v. State, 46 S.W.3d 902 (Tex. Crim. App. 2001) (en banc).  The Mata court held the trial court
erred in admitting retrograde extrapolation testimony because the State failed
to prove by clear and convincing evidence the expert testimony was
reliable.  Id. at 917.  Germane to the court=s decision was the
fact that the expert provided many inconsistent answers, relied on one single
intoxilyzer test conducted over two hours after the alleged incident, and could
not identify Aone single personal characteristic of MataChe did not know
whether Mata had eaten anything that night and if so, how much; how much Mata
had had to drink; what Mata had been drinking; when Mata=s last drink was
[consumed]; the length of Mata=s drinking spree;
or even Mata=s weight.@  Id.              The
Court of Criminal Appeals held, however, that retrograde extrapolation can be
reliable if certain factors are known.  Id.
at 916.  The court=s primary
consideration is whether the expert can apply the science and explain it with
clarity.  Id.  The expert must be able to recognize some of
the difficulties inherent in retrograde extrapolation and be able to
consistently apply the science.  Id.    In determining reliability, the court
should also consider (a) the length of time between the offense and the tests
administered; (b) the number of tests given and the length of time between each
test; and (c) whether, and if so, to what extent, any individual
characteristics of the defendant were known to the expert.  Id. 
Relevant personal characteristics may include the person=s weight and
gender, typical drinking pattern and tolerance for alcohol, how much the person
had to drink on the day in question, what the person drank, the duration of the
drinking spree, time of last drink, how much and what food the person had
consumed before, during or after the drinking spree.  Id. 


The expert does not need to know every single personal fact
about the defendant in order for the extrapolation to be reliable.  Id. at 916B17.  Otherwise, Ano valid
extrapolation could ever occur without the defendant=s cooperation,
since a number of facts known only to the defendant are essential to the
process.@  Id. at 916.  Thus, this court must employ a balancing test
between the factors to determine if the trial court abused its discretion.  Id. at 917.  The Court of Criminal Appeals set forth the
following guidelines when balancing the factors: 








If the State had more than one
test, each test a reasonable length of time apart, and the first test [was]
conducted within a reasonable time from the time of the offense, then an expert
could potentially create a reliable estimate of the defendant=s BAC with limited knowledge of
personal characteristics and behaviors. 
In contrast, a single test conducted some time after the offense could
result in a reliable extrapolation only if the expert had knowledge of many
personal characteristics and behaviors of the defendant.  Somewhere in the middle might fall a case in
which there was a single test a reasonable length of time from the driving, and
two or three personal characteristics of the defendant were known to the expert.

Id. at 916B17.

B.      Application
of Mata

The intoxilyzer test was administered to
appellant approximately three and a half hours after the offense, and appellant
was not taken into custody for over an hour and a half after the offense.  This delay impairs the ability of an expert
witness to make an accurate and reliable retrograde extrapolation.  Additionally, because appellant=s BAC tests were
administered only two minutes apart, this case is most comparable to a single
test conducted some time after the offense, thus requiring the expert to have
knowledge of many personal characteristics and behaviors of the defendant in
order for the retrograde extrapolation to be reliable.

Rickey Viser testified as an expert on
behalf of the State.  Viser, a
criminalist and technical supervisor for the Houston Police Department Crime
Laboratory, is responsible for supervising the breath test program for the
Texas Department of Public Safety.  He is
a certified breath test operator and has participated in many additional
training programs.  He testified that
after reviewing all of the maintenance records and the records from the tests
actually administered to appellant, the equipment was in good working
order.  








Viser was able to ascertain certain known factors about
appellant from the arrest report prepared by Officer Dumas.  Those known factors include the following:
appellant (1) was approximately five feet six inches in height; (2) weighed
approximately one hundred and fifty pounds; (3) was born on November 26, 1950; (4)
is male; and (4) had eaten lasagna as his last meal at approximately 3:00
p.m.  During the motion to suppress, the
State posed a hypothetical to Viser using appellant=s known facts, the
actual results of the breath tests, and the assumptions that the person=s last drink was
consumed at approximately 7:00 p.m. and he was driving at 7:00 p.m.  Viser opined that the person=s blood alcohol
content at 7:00 p.m. would range from 0.13 to 0.14.  The State posed a second hypothetical on the
same facts, except the person=s last drink was
at 6:00 and he was driving at 6:40. 
Based on this scenario, Viser testified the BAC would be 0.15 to 0.16 at
6:40 p.m.  

When asked how he calculated the BAC, Viser testified he
extrapolated the BAC based on the average person=s ability to
absorb alcohol at an average of 0.02 per hour, and then gave a range.  He testified food was not a factor in this
scenario because it would have been digested by 5:00 p.m. and would not have
affected the absorption rate.  He further
explained that 

by the test being at 10:10,
roughly, 10:10 p.m., and the person seeing B the last time he was driving was at 6:40, that=s roughly three hours, roughly; so,
a person would lose one drink per hour, which is 0.03, so it would be three
times 0.02 added to the 0.103, which would give you about 0.16, add those two
numbers together.  That=s why I incorporated a range of
0.15 to 0.16.

Viser apparently did not find the additional half hour
to be important, did not explain how he derived the range of 0.15 to 0.16, and
did not indicate whether that range took into account the personal
characteristics of the hypothetical person. 
Additionally, none of Viser=s hypotheticals
during the motion to suppress accounted for the hour and a half time period
when appellant was not in custody following the accident.  Indeed, the significant factors Viser relied
upon were the assumptions provided by the State, assumptions not supported by
any facts.  The only evidence in the
record appellant may have been drinking before the accident came from Allison=s and Robert=s testimony.  There is simply no other evidence appellant
was drinking, how much he had to drink, the type of alcohol consumed before the
accident, or the time of his last drink. 









  
On cross-examination during the motion to suppress, Viser demonstrated
his knowledge of the additional factors which may affect the results of retrograde
extrapolation.  Viser admitted a key
consideration is the difference in time between the time of offense and time
the test is administered.  He recognized
more than one breath test is necessary to determine whether or not a person is
absorbing or eliminating, and without tests conducted over a greater span of
time, many variables could affect the results. 
Viser testified that when determining a distribution curve, two tests
would be significant, but that more than one test would not make a difference in
conducting a retrograde extrapolation analysis. 
However, according to Viser, two tests would be relevant when factoring
in an individual=s unique characteristics to determine his
BAC at the time of the accident.  It is
unclear from Viser=s own testimony whether one test or two
tests were necessary to obtain accurate and reliable results in conducting
retrograde extrapolation.  In fact, when
asked why two tests were performed in this case, he testified that it was to
ensure the equipment was functioning properly and the results were
accurate.  Viser did not agree that the
number of tests given and the length of time between each test was an important
consideration.[3]      

Additional factors, not known by Viser,
which would influence his analysis include: drinking patterns, alcohol
tolerance, how much the appellant had to drink, what appellant drank, when he
started drinking, how long he had been drinking, when the last drink was
consumed, and how much he had to eat. 
Appellant=s counsel asked Viser whether he could
form an opinion as to a person=s BAC, knowing
only that person=s height, weight, gender and the type of
food consumed seven hours earlier.  Viser
responded that he could not extrapolate without additional information, such
as, time of last drink, time of the test, and results of the test.  Thus, according to Viser, he could not give
an accurate extrapolation without knowledge of the time of the last drink, an
unknown factor here. 








In view of the significant amount of time
that passed between the time of the offense and time the breath test was
administeredCespecially given the testimony that appellant
was drinking for an hour and a half between the accident and the time he was
taken into custodyCunder Mata, Viser was required to
have knowledge of many personal factors of appellant.  Applying the factors set forth in Mata,
(1) there was a considerable amount of time that elapsed between the offense
and the time of the breath tests; (2) two tests were administered, but these
tests were so close in time as to prohibit any meaningful analysis regarding
absorption or elimination; and (3) Viser knew only a few of appellant=s personal
characteristics, none of which included the timing and amount of appellant=s consumption of
alcohol.  Additionally, Viser did not
explain how his lack of information regarding appellant=s activities after
the offense, but before being taken into custodyCa time Moffett
testified appellant was drinkingCaffected the
extrapolation.  The State was unable to
show Viser=s testimony was reliable because Viser did
not clearly explain the science of retrograde extrapolation, and Viser did not
know many relevant, important personal characteristics of appellant.  Accordingly, we hold the trial court abused
its discretion in admitting Viser=s testimony based
on retrograde extrapolation.  

C.      Harm
Analysis

Next, we must determine whether the trial
court=s error was
harmful pursuant to Texas Rule of Appellate Procedure 44.2.  The State argues any error was harmless
because the charge submitted by the trial court contained both the Aper se@ and Aimpairment@ theories of
intoxication;[4]
thus, the jury=s verdict could be upheld on either
theory.  However, following the Court of
Criminal Appeal=s recent holding in Bagheri v. State,
we find this argument without merit.  Bagheri,
119 S.W.3d 755 (Tex. Crim. App. 2003).   









In Bagheri, the defendant had been
convicted of driving while intoxicated after the trial court erroneously
admitted retrograde extrapolation evidence. 
Id. at 760.  On appeal, the
State conceded the expert testimony did not meet the standards set forth in Mata,
but argued the error was harmless because the jury could have convicted the
defendant under either the Aper se@ or the Aimpairment@ theory, as
submitted to the jury by a general charge. 
Id.  The Bagheri
court rejected the State=s contention, holding the Aissue was whether
the erroneously admitted testimony might have prejudiced the jury=s consideration of
the other evidence or substantially affected their deliberations.@  Id. at 763.  Thus, the issue is not whether the jury
charge sets out a valid and proper means of committing the offense of DWI or
whether there was sufficient evidence to prove one of the alleged means by
which appellant committed the offense; rather, this court must ask whether the
extrapolation evidence offered by the State=s expert to prove Aper se@ intoxication
might have seriously affected the jury=s ability to
determine if appellant was intoxicated, whether by Aimpairment@ or Aper se.@  Id. at 762 n.5.  Therefore, we must employ the standard Rule
44.2 harm analysis and evaluate the harm flowing from the erroneous admission
of the retrograde extrapolation evidence. 
Tex. R. App. P. 44.2; Bagheri,
119 S.W.3d at 763.

Here, the trial court=s erroneous
admission of retrograde extrapolation evidence did not rise to the level of
constitutional error; thus, the error must be disregarded unless appellant=s substantial
rights are affected.  Tex. R. App. P. 44.2(b); Bagheri,
119 S.W.3d at 762B63. 
Substantial rights are not affected Aif the appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  This court must
consider the entire record, including testimony, evidence, voir dire, closing
arguments, and jury instructions to determine whether the jury was
affected.  Bagheri, 119 S.W.3d at
763; Motilla v. State, 78 S.W.3d 352, 355B56 (Tex. Crim.
App. 2002).  We should also consider Awhether the State
emphasized the error, whether the erroneously admitted evidence was cumulative,
and whether it was elicited from an expert.@  Bagheri, 119 S.W.3d at 763.  Additional factors include the nature of the
evidence supporting the verdict, the character of the alleged error, and how it
may be considered in connection with other evidence in the case.  Id.   









As in Bagheri, the jury=s general verdict
in this case makes it impossible to determine which theory the jury relied
upon.  Bagheri, 119 S.W.3d at
763.  While relevant, this fact alone is
not determinative; rather, the issue becomes whether the erroneous admission of
the retrograde extrapolation evidence may have prejudiced the jury=s consideration or
substantially affected their deliberations. 
Id.  Therefore, we turn to
the testimony and evidence presented at trial.

The testimony challenged on appeal was
elicited from an expert.  The prosecutor
relied heavily on Viser=s credentials and urged the jury to rely
on Viser=s expert opinion
because he was a trained professional who Adeserved@ credibility.  Additionally, during voir dire, the
prosecutor alluded to the fact that trial testimony would explain why a blood
alcohol test might be higher or lower at the time the test is administered as
compared to the time of driving.  The
prosecutor also stated during voir dire that the Texas Department of Public
Safety determined use of an Intoxilyzer Ais the most
reasonable, accurate instrument out there to determine somebody=s blood alcohol
content on the basis of their breath. 
They have determinedBnot me, not IBthe DPS has
determined that that is the most accurate instrument out there.@  








Viser testified at length during trial
about the validity of retrograde extrapolation and with certainty that
appellant was legally intoxicated, even though Viser could not clearly explain
the science of retrograde extrapolation. 
During direct examination, Viser opined appellant Awas twiceCalmost twice the
legal limit.@ 
The State also emphasized Viser=s conclusion
during re-direct examination by asking the following question: AAnd in any of the
hypotheticals that either I gave you or the defense counsel gave you, were any
of your calculations that the defendant would have been below the legal limit
of .08 at the time of driving?@  Viser responded that all of the hypotheticals
that he Awas able to use
retrograde extrapolation on@ rendered results
above the legal limit.  The prosecutor
again stressed this fact during closing argument by stating that A[i]n every single
hypothetical with Rick Viser, [appellant] was over that legal limit.  Every one.@  The State not only emphasized the erroneously
admitted evidence, but also emphasized Viser=s
credentials.  

Additionally, the extrapolation evidence in this case was not
cumulative.  There was no other Ascientifically reliable@ evidence presented in this case
which would have indicated appellant was intoxicated.  There was testimony presented by Allison
Matsu that appellant smelled strongly of alcohol, could not walk straight, and
that he was Astumbling all over the place.@ 
Matsu testified that, in her lay opinion, appellant was intoxicated and
could not operate a vehicle safely. 
Robert Turner testified that appellant appeared to be intoxicated at the
time of the offense based on his observations that appellant smelled of
alcohol, had bloodshot eyes, slurred his speech, shuffled from side to side,
and was very hostile.  Turner=s testimony, however, was impeached
on cross-examination when he admitted some of his answers changed a few days
before trial after a conversation with Allison Ajogged@ his memory.  Additionally, appellant=s roommate, Bruce Moffett, testified
that shortly after the accident appellant began drinking, but he did not have
any reason to believe appellant had been drinking prior to the accident.  The prosecution also presented testimony of
two officers present at the scene of the accident approximately one and a half
hours later.  Both officers testified
appellant showed signs of intoxication; however, the defense offered
a reasonable explanation for appellant=s alleged
intoxication when the officers arrived.  


The jury was free to assess the
credibility of the witnesses in determining whether appellant was legally
intoxicated; however, the jury was likely swayed by the scientifically precise
conclusions provided by Viser.  We cannot
say the introduction of the retrograde extrapolation evidence had but a slight
effect or did not influence the jury=s verdict.  See Bagheri, 119 S.W.3d at 764.  Therefore, appellant=s second issue is
sustained.  

Conclusion








After examining the entire record, we
conclude the record contains legally sufficient evidence to support the
verdict; however, we cannot say with fair assurance the jury was not influenced
by the trial court=s erroneous admission of the unreliable
retrograde extrapolation evidence; therefore, we must reverse the judgment of
the trial court and remand for a new trial. 
Given our disposition of appellant=s second issue, we
will not address appellant=s factual
sufficiency challenge.   

 

 

 

 

/s/      John S. Anderson

Justice

 

 

Judgment
Reversed and Remanded and Opinion filed April 22, 2004.

Panel
consists of Chief Justice Hedges and Justices Anderson and Seymore.

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  Retrograde
extrapolation is the computation back in time of a person=s blood-alcohol level. 
Mata v. State, 46 S.W.3d 902, 908B09 (Tex.
Crim. App. 2001) (en banc).  In a DWI
case, it is used to determine the blood-alcohol level at the time of driving
based on test results obtained at a later time. 
Id.





[2]  Subsection (A)
is referred to as the Aimpairment@ theory,
and subsection (B) is referred to as the Aper se@ theory.  





[3]  One of the indisputable
concepts in retrograde extrapolation is that multiple testsCthe more time between the tests the betterCallow the expert to determine whether a person is
absorbing or eliminating alcohol, and thereby more accurately and reliably
determine that person=s BAC at the time of the offense.   Mata, 46 S.W.3d at 916. The absence
of multiple tests, widely separated in time, removed a critical factor from the
retrograde extrapolation analysis testimony introduced at trial.    





[4]  The charge
submitted to the jury defined Aintoxication@ as:

(A)       not
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, a dangerous drug, a
combination of two or more of those substances, or any other substance into the
body; or

(B)        having
an alcohol concentration of 0.08 or more. 


Subsection (A) is referred to as the Aimpairment@ theory,
and subsection (B) is referred to as the Aper se@ theory.