Opinion issued December 8, 2005







In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00389-CR




DONOVAN KEITH WAPPLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 1033687




DISSENT FROM OPINION ON REMAND FROM 
THE COURT OF CRIMINAL APPEALS

          I respectfully dissent. The majority acknowledges that the trial court’s denial
of a defendant’s right to ask proper voir dire questions deprives the defendant of his
Sixth Amendment right to exercise his peremptory strikes intelligently and is thus
constitutional error subject to a Rule 44.2(a) analysis under Gonzales v. State, 994
S.W.2d 170 (Tex. Crim. App. 1999), Franklin v. State, 138 S.W.3d 351 (Tex. Crim.
App. 2004), and Rios v. State, 4 S.W.3d 400 (Tex. App.—Houston [1st Dist.] 1999,
pet. dism’d). Rule 44.2(a) requires us, when conducting a harmless error review of
constitutional error, to “reverse a judgment of conviction or punishment unless the
court determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.” Tex. R. App. P. 44.2(a). “If there is a reasonable
likelihood that the error materially affected the jury’s deliberations, then the error is
not harmless beyond a reasonable doubt. The reviewing court should calculate, as
nearly as possible, the probable impact of the error on the jury in light of the other
evidence.” McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2002) (citations
omitted); see also Wesbrook v. State, 29 S.W.3d 103, 119–20 (Tex. Crim. App. 2000). 
          Although the majority correctly recites the Rule 44.2(a) standard of review for
harmless constitutional error, it actually constructs its own standard of review of non-constitutional error subject to a Rule 44.2(b) analysis in an apparent attempt to follow
Rich v. State, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In Rich, the Court of
Criminal Appeals stated that “[a] trial judge’s impermissible exclusion of a proper
question during jury voir dire is subject to a harmless error analysis” when voir dire
is conducted in a group setting, but it did not state whether the analysis should be
conducted under Rule 44.2(a), governing constitutional error, or under Rule 44.2(b),
governing non-constitutional error; however, because the court of appeals had
concluded that Rule 44.2(b) applied, and because the appellant did not contest that
conclusion, the Court of Criminal Appeals assumed that Rule 44.2(b) applied. See
160 S.W.3d at 577.


 The court observed that in reviewing for non-constitutional error
under Rule 44.2(b), the appellate court is required to “assess whether the defendant’s
substantial rights were affected—that is, whether the error had a substantial and
injurious effect or influence in determining the jury’s verdict.” Id. It continued, “In
the case of the erroneous admission of evidence, we have said that the appellate court
should consider everything in the record, including any . . . evidence admitted . . . the
nature of the evidence supporting the verdict, the character of the alleged error and
how it might be considered in connection with other evidence in the case, the jury
instructions, the [parties’] theories, closing arguments, voir dire, and whether the
State emphasized the error.” Id. at 577–78. It concluded, “We believe these same
general factors are relevant considerations in determining the harm from being denied
a proper question to the venire.” Id. at 578. The court reversed the case and
remanded it to the court of appeals “to conduct a proper harm analysis,” without
further instructions. 
          While stating that it is using the Rule 44.2(a) standard of review and is
applying the Rich factors, the majority in this case actually constructs its own
standard of review of harm from denial of the opportunity to put a proper voir dire
question to the venire. Unlike Wesbrook, McCarthy, and Rich, the majority limits its
analysis to addressing “the harm resulting from the trial court’s error in refusing to
permit proper voir-dire questions by appellant concerning (1) how the panel would
treat illegally obtained statements and (2) whether the panel could disregard illegally
obtained statements,” and it assesses that harm by asking how the voir dire error
might have impacted the jury’s mental state as gleaned by reviewing the Rich factors.
          While the Rich factors are a useful gloss on the thoroughness of the review of
the record required both by Rich and by authorities analyzing voir dire error under
Rule 44.2(a), Rich does not purport to overrule Gonzales, Franklin, and Rios. 
Therefore, I believe we are compelled to conduct a standard Rule 44.2(a) harm
analysis by reviewing the record to determine whether there is a reasonable likelihood
that the voir dire error changed the jury’s persuasion on the issue in question, namely
appellant’s guilt, incorporating the Rich factors as a guide to our review. The
standard of review for constitutional error under Rule 44.2(a) is set out by the Court
of Criminal Appeals in Wesbrook, 29 S.W.3d at 119–20 and McCarthy, 65 S.W.3d
at 52. 
          In Wesbrook, the Court of Criminal Appeals stated that “the critical inquiry is
whether the error may have contributed to appellant’s conviction or punishment.” 29
S.W.3d at 119; see also Tex. R. App. P. 44.2(a). It then continued:
If there is a reasonable likelihood that the error materially affected the jury’s
deliberations, then the error was not harmless beyond a reasonable doubt. We
must be able to conclude from the record that the erroneously admitted
evidence was, in fact, harmless as to punishment beyond a reasonable doubt. 
An appellate court should not focus on the propriety of the outcome of the trial. 
Instead, the appellate court should calculate as much as possible the probable
impact of the error on the jury in light of the existence of other evidence. 
While the most significant concern must be the error and its effects, the
presence of overwhelming evidence supporting the finding in question can be
a factor in the evaluation of harmless error. If an appellate court rules that an
error is harmless, it is in essence asserting the nature of the error is such that
it could not have affected the jury. Stated in an interrogatory context, a
reviewing court asks if there was a reasonable possibility that the error, either
alone or in context, moved the jury from a state of nonpersuasion to one of
persuasion as to the issue in question.

29 S.W.3d at 119–20 (citations omitted). The court held that because the jury
possessed details of both the defendant’s crime and his solicitation to
murder—evidence sought to be used against him at the punishment stage of his
trial—there was no reasonable likelihood that an inadmissible portion of the
testimony consisting of incriminating information elicited from him by a jailhouse
informant “considered either alone or in context, moved the jury from a state of
nonpersuasion to persuasion regarding the issue of future dangerousness,” thereby
affecting the defendant’s punishment. Id. Therefore, it concluded that the error in
admitting the illegally obtained inculpatory information was “harmless beyond a
reasonable doubt.” Id. at 120.
          Applying the same standard of review to the record in McCarthy, the Court of
Criminal Appeals concluded that, even though there was ample independent evidence
of guilt, it was impossible to say there was no reasonable likelihood that the State’s
use of the defendant’s illegally obtained statement materially affected the jury’s
deliberations and thus contributed to the jury’s verdict of guilty. See 65 S.W.3d at
52–56. The State had relied extensively on the defendant’s illegally obtained
statement during its case-in-chief and closing arguments as direct evidence to prove
her guilt, to establish motive, and to help explain the murder weapon, and the
statement was powerful enough to establish guilt, paint the defendant as an
unrepentant liar, and set out her cruel and greedy motive for killing her elderly
neighbor, with a potentially indelible impact on the jury. Id. Thus, the court found
harmful constitutional error. Id. at 56.
          Had it followed Wesbrook and McCarthy and incorporated the Rich factors in
its review, the majority in this case would have reviewed the record to determine
whether “there was a reasonable possibility that the error [in denying appellant the
opportunity to question the venire members about their ability to follow an instruction
to disregard appellant’s inculpatory statements if they believed them illegally
obtained], either alone or in context, [of the entire voir dire, evidence, instructions,
parties’ theories of the case, closing arguments, and emphasis placed on the error],
moved the jury from a state of nonpersuasion to one of persuasion as to the issue in
question,” namely appellant’s guilt. See Wesbrook, 29 S.W.3d at 119–20. That is,
had the majority employed the correct standard of review of constitutional error under
Rule 44.2(a), it would have determined whether the record demonstrated that the
impact of the trial court’s denial of appellant’s proper voir dire question was
sufficient to move the jury from a state of nonpersuasion to one of persuasion as to
appellant’s guilt. It would not have attempted to determine how the jury panel would
treat illegally obtained statements or whether the jury panel could disregard such
statements. 
          Instead, the majority first considers the effect on the jury of the trial court’s
instruction to disregard any inculpatory statement made by appellant unless the jurors
“first believe from the evidence beyond a reasonable doubt that the same was freely
and voluntarily made by the defendant without compulsion or persuasion by him” and
that he was first given his article 38.22 warnings. See Tex. Code Crim. Proc. Ann.
art. 38.22 (Vernon 2005). It is well established that a jury is presumed to follow such
an instruction and that error may not be found on the basis that it did not unless that
presumption is rebutted by evidence. See Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998). The majority acknowledges that this presumption “weighs
in favor of finding the error harmless,” but it also states that it “cannot determine
whether the jurors actually followed the instruction because appellant was deprived
of the opportunity to conduct voir dire concerning the charge actually given at his
trial, which called for the jury to assess evidence pertinent to the central, disputed
issue of his intoxication.” Thus, although the majority states that the presumption
that the jury followed instructions weighs in favor of finding the voir dire error
harmless, it effectively nullifies the presumption by deciding that it “cannot determine
whether the jurors actually followed the instruction.” (Emphasis added.) 
          The only fair inference from the majority’s statement is that while an
instruction to disregard cures error in the improper admission of genuinely illegally
obtained evidence presented to the jury itself in the absence of evidence that a juror
failed to disregard the illegally obtained evidence, it does not cure error in the denial
of the opportunity to question the entire venire about whether a veniremember who
might or might not have sat on the jury would be able to follow an instruction to
disregard evidence that might or might not turn out to have been illegally obtained,
even if there is no evidence that such a person sat on the jury or that such evidence
affected the verdict, because the reviewing court cannot actually know what the jury
thought. 
          Without the presumption, the instruction to disregard is necessarily of
negligible weight under the majority’s standard of review of voir dire error as an
inquiry into “how the panel would treat illegally obtained statements and . . . whether
the panel could disregard illegally obtained statements.” These are generally
unknowable subjective factors in the absence of a presumption that the jury
disregarded evidence it thought illegally obtained and in the absence of any evidence
in the record that any juror was actually persuaded to find appellant guilty on the
basis of illegally obtained evidence, of which there was none. With both checks on
the reviewing court’s subjective assessment of what the panel might have thought
nullified, it is not surprising that the majority found it could not determine the effect
of the voir dire error on the jury that was actually seated. In short, the majority
assesses the impact of the error on the jury’s mental state and finds it unknowable,
rather than looking to the record to determine the impact of the denial of the question
on the jury’s determination of guilt. 
          Had the majority reviewed the record to determine whether appellant’s inability
to question the venire regarding their ability to disregard illegally obtained evidence
might have “moved the jury from a state of nonpersuasion to one of persuasion” as
to appellant’s guilt, as Wesbrook requires, it would have had to conclude that there
was no evidence that the error moved the jury to find appellant guilty rather than not
guilty. Not only was the jury presumed to follow the trial court’s instruction to
disregard such evidence, and not only was there no evidence that they disregarded the
instruction, but also, as we held in a portion of our original opinion, appellant’s
inculpatory statements were not illegally obtained, and, even if they had been, they
were merely cumulative of other evidence which was sufficient to establish
appellant’s guilt beyond a reasonable doubt. Wappler, 104 S.W.3d at 668–69.



          Wesbrook states, “While the most significant concern must be the error and its
effects, the presence of overwhelming evidence supporting the finding in question
can be a factor in the evaluation of harmless error.” 29 S.W.3d at 119. In our
original opinion, we determined that the admission of appellant’s inculpatory
statements would have been harmless error even if they had been illegally obtained,
and we summarized the evidence of appellant’s guilt apart from those statements:
Chang, Faro, and Romero all testified that appellant appeared intoxicated. 
There was evidence that appellant was unsteady on his feet, that his eyes were
bloodshot, and that his speech was slurred. Chang testified that he could not
dial the cell phone. Appellant was seen using a rag to clean the inside of his
car, and the rag smelled of alcohol. Finally, there was evidence that appellant
had lost control of his physical faculties by urinating in his pants and that he
was belligerent. Therefore, the inculpatory statements by appellant were
cumulative of other evidence of intoxication presented by the State.
Wappler, 104 S.W.3d at 668–69. We found that the evidence was sufficient to
support a guilty verdict beyond a reasonable doubt, even if appellant’s inculpatory
statements had been illegally obtained, which they were not. The Court of Criminal
Appeals reversed our holding that appellant was estopped to complain of voir dire
error and remanded the case for proceedings consistent with its opinion. See
Wappler, 138 S.W.3d at 334. The court did not cite to any error in our conclusions
that appellant’s inculpatory statements were legally obtained and that they were
cumulative of other evidence factually sufficient by itself to support appellant’s
conviction for DWI. See 104 S.W.3d at 668–69, 670.
          Nevertheless, ignoring and effectively overruling our prior holding, the
majority now reweighs the evidence and determines that “[t]he remaining [Rich]
factors all point to a conclusion that the trial court’s error was harmful.” Specifically,
“[a]ppellant’s admission that he had been drinking earlier in the day at the casinos
was nearly the equivalent of a confession to DWI.” It thus necessarily finds there is
a reasonable likelihood that the trial court’s denial of the opportunity to ask a proper
voir dire question was sufficient to have moved the jury from a state of nonpersuasion
to one of persuasion as to appellant’s guilt, even though we had previously held that
appellant’s inculpatory statements were admissible and that the other evidence of his
guilt was sufficient to convict him of DWI beyond a reasonable doubt. Cf. Wesbrook,
29 S.W.3d at 119–20 (“[B]ecause the jury possessed details of both the crime itself
and the solicitation to murder, there is no reasonable likelihood that the inadmissible
portion of Jones’ testimony, considered either alone or in context, moved the jury
from a state of nonpersuasion to persuasion regarding the issue of future
dangerousness. The error that occurred was harmless beyond a reasonable doubt.”).
          Like the Court of Criminal Appeals in Wesbrook, I would conclude that
because the jury is presumed to have followed the instruction to disregard evidence
it thought illegally obtained, because it possessed overwhelming evidence supporting
appellant’s conviction for DWI, and because appellant’s inculpatory statements, even
had they been illegally obtained, which they were not, were merely cumulative of
other evidence that appellant had been drinking heavily prior to being stopped, there
is no reasonable likelihood that the denial of the opportunity to ask the proper voir
dire question at issue moved the jury from a state of nonpersuasion to one of
persuasion with regard to appellant’s guilt.
          Because I would hold that the trial court’s error was harmless beyond a
reasonable doubt under Rule 44.2(a)’s strict standard for review of harmless
constitutional error, I would necessarily hold that the error was harmless under
44.2(b)’s less stringent standard for determining whether appellant’s “substantial
rights were affected—that is, whether the error had a substantial and injurious effect
or influence in determining the jury’s verdict.” Rich, 160 S.W.3d at 577. 
          I would affirm the judgment of the trial court.
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Justice Keyes, dissenting.
Publish. Tex. R. App. P. 47.2(b).