**Bennie Earl ROBERTS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1481–97.**

Court of Criminal Appeals of Texas,
En Banc.

Oct. 21, 1998.

Steve Stark, for appellant.

Betty Marshall, Asst. State's Attorney, Matthew Paul, State's Attorney, Austin, for State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

PER CURIAM.

Appellant, Bennie Earl Roberts, was convicted by a jury of delivery of a controlled substance and sentenced by the trial court to thirty years confinement. At the end of *voir dire* and over appellant's objection, the trial court conducted a jury shuffle, after both sides had questioned jurors. As a result of the shuffle, two members of the jury panel who could not have been reached as originally seated were moved into the strike zone. Appellant exercised a peremptory strike to remove one of them.

The Court of Appeals held that the trial court committed reversible error in conducting a jury shuffle after the conclusion of *voir dire*. *Roberts v. State*, No. 12–94–00205–CR, slip op. at 5 (Tex.App.-Tyler August 29, 1997, pet. granted) (not designated for publication). We granted the State's petition for discretionary review to determine whether the Court of Appeals erred in reversing appel-

lant's conviction for jury shuffle error without conducting a harm analysis.

At the time of its decision, the Court of Appeals did not have the benefit of our decision in *Cain v. State*, 947 S.W.2d 262 (Tex. Crim.App.1997). There, we said:

> Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis. Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless beyond a reasonable doubt under [former] Rule 81(b)(2) [now Rule 44.2].

*Id.* at 264 (footnote omitted). Therefore, the judgment of the Court of Appeals is vacated, and the case is remanded to that court to consider, in light of *Cain* and TEX.R.APP. P. 44.2, whether the "jury shuffle" error which occurred at trial can be analyzed in terms of harm and, if so, whether any harm occurred.

MEYERS, Judge, concurring.

I join the opinion of the Court. The Court of Appeals should have the opportunity to conduct a harm analysis in the first instance, if one is called for.

I would expect any harm analysis to be a rather perfunctory affair in light of *Jones v. State*, No. 72,135 slip op., — S.W.2d —, 1998 WL 618992 (Tex.Crim.App. Sept. 16, 1998). Per *Jones*, voir dire error that is not of constitutional magnitude is harmful only if the defendant can show he was deprived of a lawfully constituted jury as a result of the error.[1] *Id.* at 13, at ——. In other words, unless the defendant can somehow prove he was deprived of a fair and impartial jury, the voir dire error was not harmful. Not only

---

1. Judge Womack vilifies my broad view of *Jones'* ramifications. *Concurring op.* at 582 (Womack, J.). He says, quite rightly, that *Jones* involved only the erroneous granting of a State's challenge for cause. But I have become a bit of a cynic these days and believe *Jones* will be applied by this Court to other, and perhaps all, types of non-constitutional voir dire error. I don't know

which is worse—to apply, as Judge Womack's view suggests, a myriad of different "tests" to determine harm for each different type of non-constitutional voir dire error, or to simply apply the *Jones* test to all types of non-constitutional voir dire error. At any rate, my bets are on the latter; hence, this opinion.

does this rule simplify review by appellate courts, but trial courts are now freed from the burden of complying with the slew of tedious voir dire rules and procedures promulgated by our legislature.[2]

Compliance with the following rules has now been rendered optional (given that a defendant would rarely, if ever, be able to establish that noncompliance deprived him of a fair and impartial jury):[3] the prescribed manner of jury panel selection and summons, TEX.CODE CRIM. PROC. art. 33.09, the procedure for summons of a special venire, TEX. CODE CRIM. PROC. art. 34.01, the procedure for drawing of additional names for the venire, TEX.CODE CRIM. PROC. art. 34.02, the trial court's instructions to the sheriff regarding the qualifications of persons to serve on a special venire, TEX.CODE CRIM. PROC. art. 34.03, the requirement that a capital defendant be provided, two days in advance of trial, a copy of the names of persons summoned as veniremen, TEX.CODE CRIM. PROC. art. 34.04, the administering to venirepersons a specified oath, TEX.CODE CRIM. PROC. art. 35.02, the prescribed manner for hearing and deciding of excuses, TEX.CODE CRIM. PROC. art. 35.03, the manner for claiming an exemption from service, TEX.CODE CRIM. PROC. art. 35.04, that both parties may consent to the excusal of one summoned to a special venire, TEX.CODE CRIM. PROC. art. 35.05, that the court should hear challenges to the array before interrogating as to qualifications, TEX. CODE CRIM. PROC. art. 35.06, requirements as to the parties' challenges to the array,[4] TEX.CODE CRIM. PROC. art. 35.07, requirements applicable to dismissal of array upon successful challenge, TEX.CODE CRIM. PROC. art. 35.08, that after dismissing a challenged array the defendant is entitled to a list of those summoned, TEX. CODE CRIM. PROC. art. 35.09, the procedure for selecting jurors from the array and compiling a list to be provided to the parties, TEX.CODE CRIM. PROC. art. 35.11, the requirements that each juror be a qualified voter, never convicted of theft or other felony nor under indictment or legal accusation for theft or other felony, TEX. CODE CRIM. PROC. art. 35.12, the procedure for the passing of jurors for challenge in a capital case in which the State is seeking the death penalty, TEX.CODE CRIM. PROC. art. 35.13, that both the State and the defendant are entitled to 15 peremptory challenges in capital cases in which the State seeks the death penalty, TEX.CODE CRIM. PROC. art. 35.15(a), that each party is entitled to 10 peremptory challenges in non-capital felonies and capital cases in which the State does not seek the death penalty, TEX.CODE CRIM. PROC. art. 35.15(b), the specifications for assignment of peremptory challenges in other types of cases, TEX.CODE CRIM. PROC. art. 35.15(c) & (d), specified reasons acceptable

2. While trial and appellate courts have less to worry about concerning (non-constitutional) voir dire error, a defendant's burden has become greater. In addition to preserving voir dire error by rendering a specific objection, a defendant must show that the error caused him to be deprived of a fair and impartial jury. The only voir dire error that comes to mind as one that would lend itself to that showing of harm is an erroneous denial of a challenge for cause against a venireperson, who ultimately served, and who testified during voir dire that he could not be fair and impartial. But then, this becomes an issue of constitutional error, which is subject to a different standard of harm.... And indeed, this is the rub with the *Jones* "test." As I observed there, "By saying there is no harm here because there is no showing the defendant did not get a fair and impartial jury, the Court renders a subsection (b) error—which pertains by definition to only non-constitutional error—harmless because it does not involve subsection (a) error, a constitutional violation!" *Jones,* slip op. at 4, at —— (Meyers, J., dissenting).

3. This list of rules compiled from the Code of Criminal Procedure is exclusive of numerous court-made rules from this Court and the various courts of appeals which also govern the conduct of voir dire, such as rules pertaining to the manner, length or propriety of voir dire questions.

4. Judge Womack points out that under this provision one would have to prove "not only a violation of a statute that governs the assembling of the jury panel, but also that an officer of the state acted willfully with a view to securing a conviction or acquittal." *Concurring op.* at 583 (Womack, J.). Quite right. But proof of the officer's willful conduct is just part of proving a violation of the statute. The question of harm remains a separate inquiry. *Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Crim.App.1992)("*[i]n addition to showing harm,* we also note that '[e]ach party may challenge the array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or an acquittal' ")(emphasis added).

for challenges for cause, TEX.CODE CRIM. PROC. art. 35.16, the prescribed manner for conducting voir dire in capital and non-capital cases, TEX.CODE CRIM. PROC. art. 35.17, that some jurors may be absolutely disqualified regardless of the parties' consent, TEX. CODE CRIM. PROC. art. 35.19, the calling of jurors in order, TEX.CODE CRIM. PROC. art. 35.20, that the judge should decide all challenges to qualifications without delay and argument, TEX.CODE CRIM. PROC. art. 35.21, that the jury selected shall be administered a specified oath by the court, TEX.CODE CRIM. PROC. art. 35.22, rules regarding adjournment and separation of the jury after being sworn, TEX.CODE CRIM. PROC. art. 35.23, the prescribed manner for exercising peremptory challenges in non-capital cases and in capital cases where the State is not seeking the death penalty, TEX.CODE CRIM. PROC. art. 35.25, the procedure for returning jury lists to the clerk and the final reading of the names of jurors who shall make up the jury, TEX.CODE CRIM. PROC. art. 35.26, procedure for dismissal of array and calling of new array where purposeful race discrimination is shown,[5] TEX.CODE CRIM. PROC. art. 35.261, that juror information shall remain confidential except upon a showing of good cause, TEX.CODE CRIM. PROC. art. 35.29.

Despite *Jones*, I trust trial judges will, for the most part, try to adhere to the many prescribed rules and procedures for jury selection. But if they don't, appellate courts will have little to say about it.

With these observations in mind, I join the Court's opinion.

WOMACK, Judge, concurring.

I do not share Judge Meyers' understanding of *Jones v. State*, —— S.W.2d ——, 1998 WL 618992 (Tex.Cr.App., No. 72,135, September 16, 1998). He says, "Per *Jones*, voir dire error that is not of constitutional magnitude is harmful only if the defendant can show he was deprived of a lawfully constituted jury as a result of the error." *Ante* at —— (slip op. at 1). This was not the holding of *Jones*.

Our *Jones* opinion said, "We return to our previous rule, that *the erroneous excusing of a veniremember* will call for reversal only if the record shows that the error deprived the defendant of a lawfully constituted jury." —— S.W.2d at —— (slip op. at 13). This rule does not apply to all "voir dire error that is not of constitutional magnitude," much less to the other procedural statutes that are paraded in the concurring opinion.

Some of the statutes that Judge Meyers cites deal with assembling the jury array, one of which says, "Each party may challenge the array only on the ground that the officer summoning the jury has willfully summoned jurors with a view to securing a conviction or an acquittal." Code of Criminal Procedure article 35.07. Because of the statute, a successful challenge to the jury array

---

5. A *Batson* challenge can be made on the basis of noncompliance with this statutory provision and/or on the basis of a Fourteenth Amendment violation:

> [If the] objection was based on the Fourteenth Amendment, then "the [trial] court may fashion a remedy in its discretion consistent with *Batson* and its progeny." *Curry v. Bowman*, 885 S.W.2d 421 (Tex.Cr.App.1993). Such remedies may include reinstatement of the struck juror(s) on the panel. *Id.* If the objection was based on Article 35.261, then the only remedy in a non-capital case is the calling of a new "array." If the objection was based on Article 35.261 and the case is a capital one in which potential jurors are questioned in mini-panels, then the trial court may properly dismiss only the mini-panel involved and not the entire array called for the capital case. *Butler v. State*, 872 S.W.2d 227 (Tex.Cr.App.1994).

Judge Charles F. Campbell and William Green, Peremptory Challenges and Equality Under the

Law: A Batson Update, Forum, State Bar Criminal Justice Section, March 1995.

As to an alleged statutory violation, harm could never be shown because the race of a juror does not impact whether or not he can be fair and impartial:

> ... The possibility of racial prejudice in the selection of the petit jury affects the adversarial presentation of the case not at all. If anything, it affects only the makeup of the tribunal that hears and adjudges that presentation.... In any event, if race is not an allowable "proxy" for bias [citation omitted] we can only conclude that an all white jury—whether it is the product of chance or of racial discrimination in the exercise of peremptory challenges—can nevertheless render a fair and impartial verdict in the trial of a minority defendant.

*Batiste v. State*, 888 S.W.2d 9, 15 (Tex.Crim.App. 1994).

requires proof, not only of a violation of a statute that governs the assembling of the jury panel, but also that an officer of the state acted willfully with a view to securing a conviction or acquittal. *Cooks v. State,* 844 S.W.2d 697, 727 (Tex.Cr.App.1992).

Other statutes that he cites deal with the qualifications of jurors, and the challenge for cause. It has long been our rule that the erroneous denial of a defendant's challenge for cause is harmless if the defendant did not peremptorily challenge the juror, use all peremptory challenges, request an additional peremptory challenge which was denied, and state that an objectionable juror sat to whom peremptory challenge would have been made. *See, e.g., Wolfe v. State,* 147 Tex.Cr. 62, 178 S.W.2d 274 (1944).

I cite these cases to demonstrate that the concept of harmless error in jury selection is not new, and that it has not, and will not, cause "trial courts [to be] freed from the burden of complying with the slew of tedious voir dire rules and procedures promulgated by our legislature." *Ante* at 581.

*Jones* does suggest that in deciding whether an error affects substantial rights,* an appellate court must remember that a party "has no right that any particular individual serve on the jury." *See* —— S.W.2d at —— (slip op. at 12). It also mentioned that acquiring a "partisan" advantage is not a right that the jury selection statute was designed to advance. *See id.* at —— (slip op. at 12). These considerations will doubtless inform the decision in this case. I concur in the Court's opinion which remands the case to the court of appeals for that decision.

MANSFIELD, J., joins this opinion.

BAIRD, Judge, dissenting.

The Court of Appeals held the trial judge committed reversible error in conducting a jury shuffle after the conclusion of voir dire. *Roberts v. State,* (Cause no. 12–94–205–CR, delivered August 29, 1997)(Not designated for publication.). This Court now vacates

that decision and remands for a harm analysis. The majority bases this action on *Cain v. State,* 947 S.W.2d 262 (Tex.Cr.App.1997). Believing the majority reads *Cain* far too broadly, I dissent.

The *Cain* Court held failure to admonish a non-deportable citizen as required by Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) was subject to a harm analysis. *Cain,* 947 S.W.2d at 264. In reaching that holding, the Court recognized certain errors defy analysis by harmless error standards. *Ibid.* This case involves such an error.

Historically, we have recognized that jury shuffle error is not subject to a harm analysis because there is no concrete data in the record from which an appellate court can meaningfully gauge the effect of the error. *Roberts v. State,* 784 S.W.2d 430, 435 (Tex. Cr.App.1990). This is certainly true in the instant case where the Court of Appeals noted: "The persons seated in the last two seats, which may have been questioned less than the other panel members, were shuffled into the strike zone and Appellant had to exercise a strike to remove one of them from the panel." Slip op. pg. 4. The record does not and, indeed, cannot show what would have occurred or how appellant would have exercised his peremptory strikes had the trial judge not erred in shuffling the panel after voir dire.

Instead of remanding this case to the Court of Appeals to perform a useless act, the majority should follow our own precedent, as the Court of Appeals did, and affirm its judgment.

OVERSTREET, J., joins.

---

* "Any other error, defect, irregularity, or variance that does not affect substantial rights must be

disregarded." Tex.R.App. Proc. 44.2(b).