

## NUMBER 13-22-00481-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

VICTORIANO CRUZ ALVARADO,                                    Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

## ON APPEAL FROM THE 377TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellant Victoriano Cruz Alvarado appeals his conviction of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b). By four issues, appellant asserts that the trial court abused its discretion in (1) denying trial counsel's motion to withdraw; (2) denying appellant's motion for a mistrial; (3) allowing

hearsay testimony regarding the sexually transmitted disease test results of the complainant, appellant's eleven-year-old daughter Evelyn;[1] and (4) allowing extraneous offense evidence involving Evelyn's mother, Kathryn, at trial. We affirm.

## I.   BACKGROUND

Appellant was indicted on one count of continuous sexual abuse of a child, occurring on or about April 24, 2016, through February 7, 2021. At trial, Evelyn testified that the sexual abuse began when she was five or six years old, and appellant put his "private part" in her mouth. According to Evelyn, by the time she was seven, the abuse had escalated. On weekends, "every time [appellant] would get back home from the club," appellant would enter Evelyn's room and crawl into bed with her. Appellant would then "put his private part in" her anus, with the last incident occurring when she was nine years old. Evelyn testified that appellant had threatened to hurt her if she told anyone. Evelyn eventually told her mother, Kathryn, who immediately took her to the hospital.

Kathryn testified she met appellant when they were both sixteen years old, and they dated for three years, during which time she became pregnant with Evelyn. After the relationship ended, Evelyn resided with Kathryn and visited appellant every other weekend. Kathryn testified that although appellant had been physically and sexually abusive with her during their relationship, they had been co-parenting amicably prior to Evelyn's outcry.

---

[1] To preserve the complainant's privacy, we identify certain individuals by pseudonyms. *See* TEX. R. APP. P. 9.8; *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (noting that the comment to Texas Rules of Appellate Procedure 9.8 does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances).

Kathryn and Evelyn testified, against objection, that Evelyn was diagnosed at the hospital with a sexually transmitted disease. After which, the trial court admitted evidence of the sexual assault nurse examiner's (SANE) report, which included Evelyn's test results confirming her chlamydia diagnosis. Appellant's medical records were also admitted, which indicated that he presented with symptoms of a sexually transmitted disease, i.e., penial discharge consistent with gonorrhea or chlamydia, but declined confirmatory testing on two separate occasions.

The jury returned a guilty verdict and sentenced appellant to fifty-five years' imprisonment. This appeal followed.

## II.    RIGHT TO COUNSEL

By his first issue, appellant labels his complaint as an "ineffective assistance of counsel" challenge, but the substance of appellant's complaint, as well as cited authority, concerns the trial court's denial of trial counsel's motion to withdraw. For that reason, to the extent he also raises an ineffective assistance claim on appeal, such claim has been inadequately briefed and waived. *See* TEX. R. APP. P. 38.1(i); *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) ("An appellate court has no obligation to construct and compose an appellant's issues, facts, and arguments with appropriate citations to authorities and to the record." (cleaned up)); *Briceno v. State*, 675 S.W.3d 87, 96 (Tex. App.—Waco 2023, no pet.) (finding waiver where appellant "inadequately briefed" an issue).

3

**A.      Standard of Review and Applicable Law**

"The Federal and Texas Constitutions, as well as Texas statute, guarantee a defendant in a criminal proceeding the right to have assistance of counsel." *Gonzalez v. State*, 117 S.W.3d 831, 836 (Tex. Crim. App. 2003); *see* U.S. CONST. amends. VI, XIV. However, such right is not absolute. *See Gonzalez*, 117 S.W.3d at 837; *see also Lopez v. State*, No. 04-22-00447-CR, 2023 WL 5068535, at *3 (Tex. App.—San Antonio Aug. 9, 2023, no pet.) (mem. op., not designated for publication). When a trial court appoints an attorney to represent an indigent defendant, the defendant has received the protections provided under the Sixth and Fourteenth Amendments. *See Reddic v. State*, 976 S.W.2d 281, 283 (Tex. App.—Corpus Christi–Edinburg 1998, pet. ref'd) (citing *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982)); *see also Longoria v. State*, No. 13-16-00680-CR, 2018 WL 3151473, at *2 (Tex. App.—Corpus Christi–Edinburg June 28, 2018, pet. ref'd) (mem. op., not designated for publication) ("[W]here the defendant is indigent and counsel has been appointed, there is no established right to pick and choose one's representation.").

Significantly, a trial court is under no duty to search for an attorney until it finds one agreeable to the defendant. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000) (per curiam). A defendant's right to counsel of choice "may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Gonzalez*, 117 S.W.3d at 837; *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (noting the trial court's "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the

4

demands of its calendar"); *see also Del Cid v. State*, No. 04-16-00391-CR, 2017 WL 2852735, at *2 (Tex. App.—San Antonio July 5, 2017, pet. ref'd) (mem. op., not designated for publication). The decision to permit the withdrawal of appointed counsel and subsequently appoint substitute counsel rests within the sound discretion of the trial court. *See Coleman v. State*, 246 S.W.3d 76, 85 (Tex. Crim. App. 2008); *see also* TEX. CODE CRIM. PROC. ANN. arts. 1.051(d), 26.04(j)(2) ("An attorney appointed under this article shall . . . represent the defendant until . . . appeals are exhausted, or the attorney is permitted or ordered by the court to withdraw as counsel for the defendant after a finding of good cause is entered on the record[.]"). The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

**B.    Analysis**

Here, appellant initially retained counsel, who secured a $500,000 surety bond for appellant. Retained counsel subsequently surrendered the surety citing appellant's failure to provide a current address, telephone number, employer name, employer address or any other locating information to guarantee his appearance in future court dates. In September 2021, at the request of retained counsel and appellant,[2] the trial court relieved counsel of his representation duties and appointed Steven Kidder as trial counsel.

At a hearing on Kidder's motion for a bond reduction on March 2, 2022, appellant notified the trial court of his request to "fire" Kidder. Appellant complained that Kidder had

---

[2] According to letters written by appellant to the trial court, his retained counsel had to be "let go after all the verbal misconduct towards [appellant's] mother."

5

only visited appellant once since getting appointed to his case and had ignored appellant's letters and phone calls. Appellant stated, "I feel and believe that an hour here, an hour there doesn't give effective assistance of counsel." The trial court ultimately denied appellant's request, concluding that there was "nothing" that appellant had shown to demonstrate that Kidder was "working contrary to [appellant's] interest." The trial court, however, signed an order appointing attorney Ben Gray to assist Kidder the same day.

Four months later, on July 5, 2022, Gray filed a motion to withdraw, citing his acceptance of employment in a different city as good cause. Shortly thereafter, the trial court granted Gray's motion and appointed attorney Kelsey Downing to assist Kidder.

On July 22, 2022, Kidder filed a motion to withdraw. As good cause, Kidder stated:

(a) [Appellant] insists upon pursuing an objective that [Kidder] considers repugnant or imprudent or with which [Kidder] has fundamental disagreement, in particular, after being requested on multiple occasions to not contact the court directly, including mis-filing an inappropriate and untimely appeal, [appellant] continues to contact the court directly.

(b) Continued representation of [appellant] has been rendered unreasonably difficult by [appellant].

(c) Communication between [Kidder] and [appellant] has become minimal and hostile.

At a hearing on Kidder's motion, the following colloquy occurred:

THE COURT: And what's your basis for the Motion to Withdraw?

[KIDDER]: I cannot get along with my client. He's disregarded my advice, and he's exhibited hostility towards me.

THE COURT: What's your position on [Kidder]'s Motion to Withdraw, [appellant]?

6

[APPELLANT]:    I have no hostility against [Kidder], only thing is how am I supposed to have confidence in somebody who don't confer with me?

THE COURT:    Who doesn't what?

[APPELLANT]:    How am I supposed to have confidence with an attorney who does not conference with me?

THE COURT:    Okay.

[APPELLANT]:    I do call. I waste my commissary money to his office. They deny. I—[Gray], he visited two—twice. [Kidder] doesn't accept phone calls, due to recordings. So that's understandable, but I mean I—if I don't know what's going on, how am I supposed to be okay with what's being done? I asked for a status, you know. I should be granted a, "This is going on. This is going on." But he's been making my steps for me without me knowing. I need to know, "Hey, what is your next move? What's our next move?" Not just go on, waltz along and not tell me nothing. I don't know if there's an ambush ahead of me or not that you're not telling me because you don't confer with me.

The trial court denied Kidder's motion to withdraw, and appellant thereafter sent a letter to the trial court, requesting Kidder's removal as counsel and permission to proceed pro se. The trial court held a brief hearing, wherein the following testimony was elicited:

THE COURT:    . . . . The reason I asked [appellant] to come over here is because I received a letter—the Court received a letter from [appellant] requesting that he be allowed to represent himself. Is there anything that you want to put on the record, [appellant]?

[APPELLANT]:    I've tried for the past six, seven, eight months to push the fact for Kidder—Mr. Steven Kidder, my first chair attorney, to do what he's obliged to do as my attorney and he's failed to do so. I pushed letters to the Court to help assist in that for the State Bar. And you, Your Honor, you forced me for the past six, seven, eight

7

months to go through with him. That right there is setting up a defendant—while he's trying to defend himself into a case—to be set up for failure. I've tried plenty of times. There was a—there was a hearing for [Gray's] withdrawal. I was not brought over here. I was informed of—I wrote a letter opposing it, and it was still granted. I, the defendant, was not notified of nothing. And by—by law, I, as a defendant, have a right to know everything and to be able to oppose it on certain reasons and grounds and I wrote the Court on why. And my—the response I got back—the response I got back was that it was being ex parte. It's not one sided when it's sent to the district clerk to be sent to the district attorney and to the Judge and the attorneys I have.

[DOWNING]: [Appellant], do you still want to represent yourself? That's what the judge needs to know.

[APPELLANT]: My thing is I—I can't have Kidder on my case. He's a burden, as I am a burden to him. He's already put in his Motion to Withdraw. Again, you forced me to do that—to be here, to—to file to represent myself. And I understand what—I've talked with [Downing] about—[Downing] about it. And I understand her outlook on things; but I also have my outlook on things, too.

The trial court denied appellant's request to remove appointed counsel, explaining that the inability of two individuals to "get along" did not constitute sufficient reasoning.

On appeal, appellant reiterates his concerns that Kidder should have been permitted to withdraw. According to appellant, the disagreement between them "rose far beyond the level of personality conflict." As evidence of such, appellant pointed to his testimony, included *supra*. However, appellant's letters to the trial court and testimony all concern a singular complaint: appellant's lack of confidence in Kidder's representation stemming from appellant's perception that Kidder did not maintain adequate levels of

8

communication. Meanwhile, Kidder presented feeling dissatisfaction that appellant had disregarded his professional advice and expressed hostility towards him during attempts to communicate. In other words, this was a personality conflict, fueled by disagreements concerning the handling of appellant's case—which does not necessitate appointment of new counsel. *See Hobbs v. State*, 359 S.W.3d 919, 927 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (concluding no abuse of discretion in denying two separately filed motions to withdraw prompted by appellant's filing of meritless grievances to the State Bar of Texas); *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.) (concluding same where appellant characterized his relationship with counsel as "irreparable, antagonistic"); *see also Grantham v. State*, No. 06-21-00150-CR, 2022 WL 4232914, at *1 (Tex. App.—Texarkana Sept. 14, 2022, no pet.) (mem. op., not designated for publication) (concluding same where appellant told the trial court he did "not like or trust [counsel] and did not feel that [counsel] would 'fight for [him] . . . at all'" and "accused [counsel] of threatening him, which prompted [counsel] to notify the trial judge, 'Almost everything [appellant]'s telling you is a lie'"); *Morris v. State*, No. 12-17-00124-CR, 2018 WL 6321081, at *3 (Tex. App.—Tyler Dec. 4, 2018, no pet.) (mem. op., not designated for publication) (concluding same where counsel filed two separate motions premised on appellant's recurring complaints that counsel was failing to communicate with him or spend time on his case); *Anderson v. State*, No. 02-17-00044-CR, 2018 WL 359635, at *7 (Tex. App.—Fort Worth Jan. 11, 2018, no pet.) (mem. op., not designated for publication) (concluding same where counsel notified the trial court that appellant had "told him that he should consider their relationship severed and asked him to file the

motion to withdraw" and "did not 'seem to have any interest in any of the legal advice'" that counsel had to offer); *see generally Johnson v. State*, 352 S.W.3d 224, 228 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (observing the prevalence of opinions examining a trial court's decision on an attorney's motion to withdraw based "on disagreements between counsel and client").

The record also reflects that Kidder's appointment came on the heels of appellant firing his retained counsel, and by the time Kidder's motion to withdraw was filed on July 22, 2022, Kidder had worked on the case for ten months, reviewed most of the discovery, and filed several pre-trial motions. Given the amount of work Kidder had already invested in the case, substitution of counsel or proceeding with Downing, who had only been appointed on the case for a few weeks, could have necessitated delay of the trial.[3] *See King*, 29 S.W.3d at 566 (considering how long counsel had been appointed to a case and the potential trial delay in its analysis of whether the trial court had abused its discretion denying request for withdraw); *Hobbs*, 359 S.W.3d at 927.

Under these circumstances, appellant has not shown that the trial court abused its discretion in refusing trial counsel's motion to withdraw. We overrule appellant's first issue.

---

[3] We further note that during the pendency of this appeal, *after* appointed appellate counsel submitted his appellate brief, appellate counsel filed a motion to withdraw, asserting the "hostile" relationship between he and appellant as cause. Following abatement and a hearing before the trial court on appellate counsel's motion, the trial court confirmed that appellant's complaints regarding appellate counsel echoed those made about prior counsel—that is, appellant felt there had not been enough communication. Appellate counsel's motion to withdraw was denied.

### III.     DENIAL OF MISTRIAL

Appellant argues by his second issue that the trial court abused its discretion in denying his motion for a mistrial. Specifically, appellant avers that the trial court failed to admonish the venire members to refrain from speaking to each other about the case before the venire members were permitted to separate. *See* TEX. CODE CRIM. PROC. ANN. art. 35.23.

### A.      Standard of Review and Applicable Law

A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). "We review the evidence in the light most favorable to the trial court's ruling, and consider only those arguments before the court at the time of the ruling." *Id.*; *Gonzalez v. State*, 608 S.W.3d 98, 107 (Tex. App.—San Antonio 2020, pet. ref'd). A mistrial is appropriate only in extreme cases of highly prejudicial error when spending any further time or effort on trial "would be wasteful and futile." *Gonzalez*, 608 S.W.3d at 107. Because mistrial is an extreme remedy, less drastic alternatives may suffice, such as the trial court's imposition of an oral and written jury instruction or questioning of the jury about the extent of any prejudice. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016); *see Turner*, 570 S.W.3d at 268–69.

As relevant here, Article 35.23 provides:

> The court may adjourn veniremen to any day of the term. When jurors have been sworn in a felony case, the court may, at its discretion, permit the jurors to separate until the court has given its charge to the jury. . . . In any case in which the jury is permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when so

11

separated.

TEX. CODE CRIM. PROC. ANN. art. 35.23. Error, if any, in failing to abide by Article 35.23 is a statutory violation, not a constitutional violation, which must be disregarded unless it affects appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Dixon v. State*, 455 S.W.3d 669, 683–84 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

## B. Analysis

Following voir dire, the trial court began calling the names of the individual venire members who had been selected to sit on the jury panel and excused all other venire members. The trial court was conducting a final roll call of the selected panel when it learned that K.V., the last venire member called, was absent. After calls to K.V.'s cell phone went unanswered, the trial court dispatched law enforcement to K.V.'s residence and instructed the selected venire members to return in two hours. The venire members had not yet been sworn or impaneled as jurors. The trial court thereafter recessed.

During the recess, appellant's trial counsel filed a motion for mistrial arguing the selected venire members were "not properly [i]mpaneled before being released for a trial break," one venire member "left the courthouse without permission," and none of the chosen venire members were admonished "to not talk to others about the case or post any information regarding the case on social media." Appellant's motion was argued outside the presence of the venire members and summarily denied. The venire members

12

then reconvened inside the courtroom and were impaneled and sworn in.[4] The trial court

then provided the jury panel with preliminary instructions, including:

> Do not discuss this case with anyone, even your spouse or friend, either in person or by other means including phone, text message, e-mail message, chat room, blog, or social networking sites such as Facebook, twitter, or Myspace. Do not allow anyone to discuss this case with you or within your hearing. If anyone tries to discuss this case with you or within your hearing, tell me immediately.

> . . . .

> Faithful performance by you of your duties is vital to the administration of justice. Texas law permits proof of any violation of the rules of proper jury conduct. By this I mean that jurors and others may be called upon to testify in open court about acts of jury misconduct. I will instruct you, therefore, to carefully follow the instructions I have given you, as well as others which you later receive while this case is on trial.

Appellant argues that trial court's actions—releasing the venire members and

instructing them to return later absent an admonishment—ran afoul of Article 35.23. We

disagree. The "proper instructions" referred to in Article 35.23 concerns a limited event

occurring *after* a jury has been impaneled and sworn in a felony case:

> When jurors have been sworn in a felony case, the court may, at its discretion, permit the jurors to separate until the court has given its charge to the jury. . . . In any case in which the jury is permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when so separated.

TEX. CODE CRIM. PROC. ANN. art. 35.23. We read no such limitation within the article with

respect to a trial court's ability to excuse venire members prior to being impaneled and

sworn in nor do we read the imposition of a requirement that venire members must be

---

[4] There is nothing in the record explaining K.V.'s prior absence or to indicate that K.V. was not present when the panel was sworn.

13

admonished prior to being impaneled and sworn in.[5] *See generally Roberts v. State*, 978 S.W.2d 580, 582 (Tex. Crim. App. 1998) (Meyers, J., concurring) (observing that Article 35.23 concerns "rules regarding adjournment and separation of the jury after being sworn").

Even so, there is no evidence that any of the venire members conversed with others about the case or posted about the case on social media as appellant's counsel supposes, or that the pre-impanel separation had a substantial and injurious effect or influence in later determining the jury's verdict. *See Turner*, 570 S.W.3d at 270 ("It was Appellant's burden to show that any of the jurors were engaged in improper conversation about the case."); *see also Fletcher v. State*, No. 04-11-00435-CR, 2012 WL 1549816, at *4 (Tex. App.—San Antonio May 2, 2012, pet. ref'd) (mem. op., not designated for publication) (holding no abuse of discretion in denial of mistrial where no evidence of jury misconduct existed at the time of ruling). Finding no error, we overrule appellant's second issue.

---

[5] To the extent appellant raises for the first time the timeliness of the trial court's administration of the jury's empanelment, such objection must first be raised at the trial court to preserve the complaint on appeal. *See White v. State*, 629 S.W.2d 701, 704 (Tex. Crim. App. 1981); *see also Mendez v. State*, No. 04-15-00311-CR, 2016 WL 3030969, at *7 (Tex. App.—San Antonio May 25, 2016, no pet.) (mem. op., not designated for publication); *Quinnones v. State*, No. 04-99-00595-CR, 2001 WL 38127, at *9 (Tex. App.—San Antonio Jan. 17, 2001, pet. ref'd) (mem. op., not designated for publication); *see generally* TEX. R. APP. P. 44.2(c)(2) (providing that this Court must presume the jury was properly impaneled and sworn unless disputed in the trial court or the record affirmatively shows to the contrary).

## IV.  HEARSAY

Appellant next argues the trial court abused its discretion in allowing hearsay testimony regarding the results of Evelyn's SANE examination, specifically her chlamydia diagnosis.

### A.  Standard of Review and Applicable Law

"We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020). "Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible. TEX. R. EVID. 801(d). A trial court's error, if any, in allowing hearsay testimony constitutes non-constitutional error which "must be disregarded if it 'does not affect substantial rights.'" *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). "An error does not affect substantial rights if the appellate court has 'a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect.'" *Id.* (quoting TEX. R. APP. P. 44.2(b)).

### B.  Analysis

At trial, the State elicited testimony from Kathryn, concerning the SANE procedure and subsequent diagnosis:

> [STATE]:   Do you know about a particular diagnosis involving the SANE exam?
>
> [KATHRYN]:  Yes, sir.
>
> [APPELLANT]:  Objection, Your Honor, calls for hearsay.

15

THE COURT:      Objection is overruled.

[STATE]:        You can answer.

[KATHRYN]:      Yes, sir. She got chlamydia.

THE COURT:      Just a minute. The jury will be instructed to disregard the response after "yes."

[STATE]:        What was the diagnosis?

[KATHRYN]:      She got a disease—

[APPELLANT]:    Your [H]onor, same objection. It's not within her knowledge.

[STATE]:        She has knowledge.

THE COURT:      Just a minute.

[APPELLANT]:    She's not qualified to testify to a diagnosis, Your Honor.

THE COURT:      It can come in on the effect of the statement on the listener. Objection overruled. You may answer.

[KATHRYN]:      She caught chlamydia from [appellant].

Appellant likewise objected based on hearsay when the State attempted to produce similar testimony from Evelyn by asking her, "When you got examined by that other nurse, did—did you find out that you were diagnosed with something?" The trial court overruled appellant's objection.

Assuming without deciding that the trial court erred in admitting either testimony, the same information—Evelyn's chlamydia diagnosis—was also testified to, without objection, by the hospital SANE coordinator, Mara Beth Israel-Uebe. Israel-Uebe testified that she conducted Evelyn's examination, she suspected the diagnosis based on her

16

observations of genital discharge, and Evelyn's diagnosis was confirmed by rectal and throat swabbing. Additionally, Israel-Uebe's SANE report, which included Evelyn's test results, were admitted into evidence without objection.

Under these circumstances, we have a fair assurance that Kathryn's and Evelyn's testimony confirming the results of Evelyn's diagnosis had but slight effect. *See id.*; *Livingston v. State*, 739 S.W.2d 311, 333 (Tex. Crim. App. 1987) ("[I]f a fact to which objected-to hearsay relates is sufficiently proven by other competent and unobjected to evidence, the admission of the hearsay is properly deemed harmless and does not constitute reversible error."); *Lewis v. State*, No. 14-21-00691-CR, 2023 WL 4873306, at *9 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd) ("[T]he improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial."); *see also Trevino v. State*, No. 13-19-00385-CR, 2021 WL 2461030, at *3 (Tex. App.—Corpus Christi–Edinburg June 17, 2021, no pet.) (mem. op., not designated for publication) ("If 'substantially the same evidence' is admitted elsewhere without objection, the improper admission of evidence is not considered harmful."). We overrule appellant's third issue.

## V.     EXTRANEOUS EVIDENCE

By his fourth and final issue, appellant argues the trial court abused its discretion in allowing evidence concerning an extraneous offense involving appellant and Kathryn in contravention of the Texas Code of Criminal Procedure Article 38.37 and the Texas Rules of Evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; TEX. R. EVID. 401–404.

**A.    Standard of Review and Applicable Law**

Generally, evidence of extraneous offenses is not admissible at the guilt-innocence phase "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Nevertheless, extraneous offenses may be admissible for other reasons. *See id.* R. 404(b)(2). Article 38.37 of the Texas Code of Criminal Procedure provides an exception to Rule 404(b)(1) in certain prosecutions, including prosecutions for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(B). Notwithstanding the Texas Rules of Evidence, Article 38.37 provides for the admission of extraneous evidence that a defendant had committed a separate identified sexual offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37, § 2(b); *see generally Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) ("The relevance of evidence is not always clear cut, and reasonable people may disagree about whether certain evidence leads to a particular inference.").

Before a trial court admits such evidence, the court must "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt" and "conduct a hearing out of the presence of the jury for that purpose." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. The trial court must also conduct a Rule 403 balancing test, although that need not be on the record. *Guedea v. State*, 683 S.W.3d 549, 555 (Tex. App.—Waco

18

2023, no pet.); *Traylor v. State*, 660 S.W.3d 214, 220 (Tex. App.—San Antonio 2022, no

pet.). When conducting a Rule 403 balancing test, the trial court

> must balance (1) the inherent probative force of the proffered item of
> evidence along with (2) the proponent's need for that evidence against
> (3) any tendency of the evidence to suggest decision on an improper basis,
> (4) any tendency of the evidence to confuse or distract the jury from the
> main issues, (5) any tendency of the evidence to be given undue weight by
> a jury that has not been equipped to evaluate the probative force of the
> evidence, and (6) the likelihood that presentation of the evidence will
> consume an inordinate amount of time or merely repeat evidence already
> admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In any given case,

"these factors may well blend together in practice." *Id.* at 642; *see Hall v. State*, 663

S.W.3d 15, 32 (Tex. Crim. App. 2021)*.*

We review a decision to admit or exclude evidence for an abuse of discretion.

*Wells*, 611 S.W.3d at 427; *Beltran v. State*, 517 S.W.3d 243, 247 (Tex. App.—San Antonio

2017, no pet.). We review the erroneous admission of extraneous offense or extraneous

bad act evidence for non-constitutional error. TEX. R. APP. P. 44.2(b); *see Lopez v. State*,

288 S.W.3d 148, 173 (Tex. App.—Corpus Christi–Edinburg 2009, pet. ref'd); *see also*

*Lippert v. State*, No. 04-22-00158-CR, 2023 WL 8607058, at *5 (Tex. App.—San Antonio

Dec. 13, 2023, no pet.) (mem. op., not designated for publication).

**B.     Analysis**

The trial court held a hearing outside the presence of the jury after the State notified

the trial court that it sought to "get into testimony about [appellant] sexually assaulting

[Kathryn] in the same exact way as alleged in the indictment." During the hearing, Kathryn

19

testified that appellant forcibly penetrated her anus during their dating relationship, while they were both minors. The trial court made the determination that the State had complied with article 38.37, concluded "this evidence could be relevant to prove intent, an element of the offense alleged in the indictment," and stated it had conducted a Rule 403 balancing test, finding that "the probative nature is not outweighed by the prejudicial effect that this evidence would have on the jury." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37; TEX. R. EVID. 403.

### 1. Uncorroborated Testimony

Appellant first argues that Kathryn's uncorroborated testimony about an event "that was unreported to police, investigated, or . . . resulted in a conviction" was not permissible under article 38.37. Kathryn's testimony, however, need not be corroborated for the trial court to make its "beyond a reasonable doubt" Article 38.37 finding. *See Deggs v. State*, 646 S.W.3d 916, 924 (Tex. App.—Waco 2022, pet. ref'd) ("An alleged victim's testimony standing alone without corroboration can be, and was in this instance, sufficient to prove an offense [under Article 38.37 § 2-a(1)]."); *see also Barrios v. State*, No. 13-22-00613-CR, 2024 WL 379521, at *7–8 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2024, no pet. h.) (mem. op., not designated for publication) (concluding same); *Reese v. State*, No. 13-21-00329-CR, 2023 WL 2421663, at *5 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2023, pet. ref'd) (mem. op., not designated for publication) (concluding same).

### 2. Rule 403 Factors

Because appellant's first argument regarding Kathryn's non-corroborative testimony is not dispositive, we now address appellant's challenge to the trial court's

application of the Rule 403 factors, beginning with the first two factors: the inherent probative force and the State's need for the evidence. *See Gigliobianco*, 210 S.W.3d at 641. We remain mindful that "Rule 403 carries with it a presumption that relevant evidence will be more probative than prejudicial." *Gittens v. State*, 560 S.W.3d 725, 732 (Tex. App.—San Antonio 2018, pet. ref'd) (quoting *Martinez v. State*, 155 S.W.3d 491, 497 (Tex. App.—San Antonio 2004, no pet.)). Although occurring years prior, Kathryn's testimony was relevant insofar as it demonstrated that appellant acted in conformity with his character when he committed sexual assault of Kathryn, a then minor, by use of penile to anal penetration. *See* TEX. R. EVID. 401; TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd) (noting that remoteness of prior offenses affects their probative value but does not automatically render the evidence inadmissible on that basis); *see also Talamantez v. State*, No. 04-21-00469-CR, 2022 WL 16954853, at *3 (Tex. App.—San Antonio Nov. 16, 2022, no pet.) (mem. op., not designated for publication) (concluding that despite twenty-five-year difference between sexual assault offenses, appellant's actions were similar enough that the jury could believe appellant's actions were in conformity with his character). Moreover, when we look to the indicted allegations, there was no eyewitnesses to the alleged incidents involving Evelyn, and Evelyn's credibility was challenged by the defense. The trial court could have reasonably concluded that the probative value of Kathryn's testimony was high, and the State had considerable need for the evidence. As the court of criminal appeals has explained, "[t]rials involving sexual assault may raise particular evidentiary and constitutional concerns because the

21

credibility of both the complainant and defendant is a central, often dispositive, issue." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). "Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence." *Id.* at 561–62. "Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such 'he said, she said' cases." *Id.* at 562. We conclude the first and second factor weighed in favor of admission.

With respect to the third factor, the phrase "unfair prejudice" in Rule 403 "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641 (citing *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). We acknowledge that extraneous-offense evidence of this nature is inherently inflammatory, and consequently clearly prejudicial. *See Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) ("We have held that sexually related bad acts and misconduct involving children are inherently inflammatory."). However, Rule 403 does not call for the exclusion of all prejudicial evidence; rather, it only allows exclusion of *unfairly* prejudicial evidence. *Proo v. State*, 587 S.W.3d 789, 814 (Tex. App.—San Antonio 2019, pet. ref'd); *see* TEX. R. EVID. 403. Here, Kathryn's testimony "discussed actions that were no more serious than the allegations forming the basis [of] the indictment." *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). Moreover, appellant "does not identify any particular facts" about Kathryn's

testimony that make it "uniquely or unfairly prejudicial." *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd); *see, e.g., Pawlak*, 420 S.W.3d at 811 (concluding that the "sheer volume" of 9,900 images of pornography, including homosexual child pornography, was unfairly prejudicial extraneous-offense evidence in a sexual assault case). Therefore, although Kathryn's testimony was prejudicial to appellant, he has not demonstrated that it was *unfairly* prejudicial. *See Pawlak*, 420 S.W.3d at 811 ("[T]he plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial."); *see also Killinger v. State*, No. 13-17-00016-CR, 2020 WL 728305, at *8 (Tex. App.—Corpus Christi–Edinburg Feb. 13, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding sexual abuse extraneous offenses testimony by complainant's mother about appellant occurring over a decade before was not unfairly prejudicial). This factor weighs in favor of admission.

The fourth and fifth factors refer to evidence tending to confuse or distract the jury from the main issues, such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641*.* The evidence of extraneous offenses presented in this case could easily be understood by a jury and was neither scientific nor technical. *See id.* Thus, we conclude the fourth and fifth factors weighed in favor of admission.

As to the last factor, the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted, Kathryn's direct examination testimony on this matter spanned less than two pages of a reporter's record

that contains over two hundred pages of testimony. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (holding that extraneous-offense testimony amounting to "less than one-fifth" of trial testimony favored admission); *see also Killinger*, 2020 WL 728305, at *9 (concluding extraneous-offense testimony favored admission where "[t]he entire direct and cross examination of [the witness] on this particular issue spans a combined six pages of a reporter's record that contains several hundred pages of testimony"). Therefore, the presentation of the extraneous-offense evidence did not consume an inordinate amount of time at trial. We conclude the last factor also favored admission.

Having balanced the Rule 403 factors, we conclude the trial court reasonably found that the probative value of the extraneous-offense evidence was not substantially outweighed by the danger of unfair prejudice and the other factors in the rule. The trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule appellant's fourth issue.

## VI.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
11th day of April, 2024.

24